UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

JOSSEAN CRISPIN,                          :
     Plaintiff,                        :
                          :
     v.                                :    Case No. 3:20cv1796(KAD)
                          :
CORRECTIONAL OFFICER                      :
FORTIN, ET AL.,                           :
     Defendants.                       :

## INITIAL REVIEW ORDER

Plaintiff, Jossean Crispin ("Crispin"), currently confined at the Cheshire Correctional

Institution, initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. §1983,

against Correctional Officers Fortin and John Doe 1, Lieutenants John Doe 3, John Doe 4, John

Doe 5 and Jane Doe 8, Nurse Jane Doe 2, Deputy Warden Egan, Counselor Colon, Dr. Jane/John

Doe 7, Dr. John Doe 9, Clinical Social Worker ("CSW") Jane Doe 6 and Warden Jane/John Doe

10.  Crispin's allegations arise from incidents that occurred while he was a pretrial detainee[1] at

Hartford Correctional Center ("HCC") and Garner Correctional Institution ("Garner") in January

and February 2018.  For the reasons set forth below, the court dismisses the complaint in part.

**Standard of Review**

Pursuant to 28 U.S.C. § 1915A(b), the court must review prisoner civil complaints

against governmental actors and "dismiss ... any portion of [a] complaint [that] is frivolous,

malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary

relief from a defendant who is immune from such relief."  *Id.*  In undertaking this review, the

court is obligated to "construe" complaints "liberally and interpret[] [them] to raise the strongest

---

[1]   The Department of Correction website reflects that Crispin was admitted to the DOC on January 10, 2018 as a pretrial detainee and that on January 30, 2019, he was sentenced to a four year term of imprisonment.  *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=339978 (last visited on February 17, 2021).

arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).

Although detailed allegations are not required under Rule 8(a) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). A complaint that includes only "'labels and conclusions,' 'a formulaic recitation of the elements of a cause of action' or 'naked assertion[s]' devoid of 'further factual enhancement,'" does not meet the facial plausibility standard. *Id.* (quoting *Twombly*, 550 U.S. at 555, 557). [2]

**Allegations**

On January 27, 2018, prison officials at Garner transferred Crispin to Hartford Correctional. *See* Compl., ECF No. 1, at 4 ¶ 1. On that date, prison officials at Hartford Correctional placed the facility on lockdown and inmates and detainees were required to remain in their cells all day and night. *Id.* Crispin experienced mental distress during his confinement in his cell because he had spent a significant period of time on administrative segregation status at Garner prior to his transfer to Hartford Correctional. *Id.* Crispin submitted a request to speak

---

[2] The court limits its review for purposes of 28 U.S.C. § 1915A to federal law claims because the purpose of an initial review order is to determine whether the lawsuit may proceed at all in federal court. If there are no facially plausible federal law claims against any of the named defendants, then the court would decline to exercise supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367. On the other hand, if there are any viable federal law claims that remain, then the validity of any accompanying state law claims may be appropriately addressed in the usual course of the litigation. Further, the court's determination for purposes of an initial review order under 28 U.S.C. § 1915A that any claim may proceed against a defendant is without prejudice to the right of any defendant to seek dismissal of any claims by way of a motion to dismiss or motion for summary judgment in the event that the court has overlooked a controlling legal principle or if there are additional facts that

to a mental health provider to "decompress mentally." *Id.*

Correctional Officer Fortin escorted Crispin to the medical department to speak with a nurse. *Id.* at 5 ¶¶ 2-3. During the escort, Officer Fortin verbally harassed Crispin and called him a child molester. *Id.* ¶ 4. Crispin ignored the verbal taunts and disparaging remarks. *Id.*

Crispin met with Nurse Jane Doe 2 and explained that he needed to "verbally vent to decompress" because he had been isolated by himself in a cell at Garner for a period of time before his transfer to Hartford Correctional Center. *Id.* ¶ 6. Nurse Jane Doe 2 would not let Crispin vent and kept interrupting him to ask him to explain what type of relief he sought from her. *Id.* ¶ 7. Crispin stated that he needed to "vent in order to decompress mentally from sensory deprivation." *Id.* Although Crispin had repeatedly stated that he was not experiencing suicidal thoughts, Nurse Jane Doe informed him that the only course of treatment available to him was placement on suicide watch. *Id.* at 6 ¶ 8. Crispin was upset because he believed that his placement on suicide watch would involve further isolation and would cause him to become mentally unstable. *Id.* Crispin leaned against the counter in the medical department and asked Correctional Officer John Doe 1[3] ("Officer John Doe 1") to call a lieutenant/supervisor because he believed that Nurse Jane Doe 2's actions constituted an abuse of power and an attempt to deter him from seeking mental health treatment in the future. *Id.* ¶ 9.

During Crispin's conversation with Officer John Doe 1, Officer Fortin suddenly picked Crispin up, flipped him in the air and slammed him to the ground headfirst. *Id.* ¶ 10. Crispin suffered a seizure and lost consciousness. *Id.* When he regained consciousness, Officer Fortin

---

would warrant dismissal of a claim.
     [3] In the complaint, Crispin also refers to Officer John Doe 1 as Correctional Officer John Doe Two or simply as Correctional Officer John Doe. *Id.* at 6-7 ¶¶ 9-11; at 11 ¶ 3. Because Crispin does not list, as named defendants, either Officer John Doe Two or Officer John Doe, the court assumes that Officer John Doe Two and

was on his back and slamming his head on the ground. *Id.* Officer John Doe 1 and Nurse Jane Doe 2 took no steps to intervene to stop the assault by Officer Fortin. *Id.* at 7 ¶ 11.

Lieutenants/Supervisors arrived at the scene and deployed a chemical agent into Crispin's face, nose, mouth and eyes. *Id.* ¶ 12. Crispin received a disciplinary report and prison officials escorted him to a cell in the restrictive housing unit and placed him on in-cell restraints. *Id.* ¶¶ 13-14. Crispin suffered swelling in his face and two black eyes. *Id.* ¶ 16. On January 28, 2018, a medical staff member dispensed medication to him and checked his in-cell restraints. *Id.* ¶ 17. Crispin requested that his injuries be documented. *Id.* A medical provider or correctional official responded that his injuries did not need to be documented and left Crispin's cell without assisting him to use the toilet. *Id.* Later that day, a medical staff member provided Crispin with his inhaler. *Id.* ¶ 18. After using the inhaler, Crispin refused to return it until correctional officials documented his injuries. *Id.* He threatened to include any medical staff member or correctional official who did not document his injuries in his lawsuit. *Id.* A lieutenant and a nurse documented Crispin's injuries and then left Crispin's cell without assisting him to use the toilet. *Id.*

On January 29, 2018, CSW Jane Doe 6 approached Crispin's cell in the segregation unit and informed him that he would be transferred to the mental health unit in South Block to be placed on suicide watch. *Id.* at 8 ¶ 19. Crispin asked why he was being placed on suicide watch given that he was not suicidal. *Id.* CSW Jane Doe 6 explained that "(D.O.C.) Supervisors" had requested that he be placed on suicide watch. *Id.* Crispin responded that the supervisors were retaliating for his complaints and that he would not agree to be transferred to a cell in the mental health unit and placed on suicide watch. *Id.*

---

Officer John Doe are in fact Officer John Doe 1.          4

CSW Jane Doe 6 left Crispin's cell and returned a short time later.  *Id.* ¶ 20.  She indicated that "(D.O.C.) Supervisors" had requested that he agree to either take a "P.R.N." medication to keep him calm or agree to be placed on suicide watch in the mental health unit. *Id.*  Because no physician had come to check on or evaluate him, Crispin refused both options. *Id.*

CSW Jane Doe 6 left Crispin's cell and returned a short time later.  *Id.* ¶ 21.  She indicated that he had to choose one of the options.  *Id.*  Although Crispin felt threatened and intimidated, he chose the "P.R.N." medication option.  *Id.*  CSW Jane Doe 6 left Crispin's cell again and returned thirty minutes later.  *Id.* ¶ 22.  She informed Crispin that he would be placed on suicide watch in the mental health unit.  *Id.*  Crispin reluctantly consented to being placed on suicide watch even though he had not expressed thoughts of suicide and a physician had not examined or evaluated him.  *Id.* at 8-9 ¶¶ 22-23.

On January 30, 2018, prison officials transported Crispin to state court for a criminal proceeding.  *Id.* at 9 ¶ 24.  Crispin informed his attorney about the assault by Officer Fortin and asked his attorney to contact the state police because he wanted to press charges against Officer Fortin.  *Id.*  After this meeting, Crispin's attorney contacted the state police on Crispin's behalf. *Id.*

Upon his return to Hartford Correctional from state court, officials placed Crispin back on suicide watch in the mental health unit.  *Id.* ¶ 25.  Several days later, Lieutenant Jane Doe 8 asked Crispin why he needed to speak to a state police officer.  *Id.* ¶ 26.  Crispin did not divulge the reasons for his request to speak to a state police officer.  *Id.*  Lieutenant Jane Doe 8 did not provide Crispin with a piece of paper to draft a statement to be submitted to a state police officer

or offer to draft the statement for Crispin.  *Id.* ¶ 27.  Crispin suspected that officials at Hartford Correctional had placed him on suicide watch to prevent him from pressing charges against Officer Fortin.  *Id.* ¶ 28.

A few days later, prison officials at Hartford Correctional transferred Crispin to Garner. *Id.* at 10 ¶ 29.  Crispin remained on suicide watch at Garner.  *Id.*  He attempted to contact the state police department through Counselor Colon, but Colon would not permit him to call the department and refused to provide Crispin with a mailing address for the department.  *Id.* ¶ 30. Counselor Colon also refused to provide Crispin with grievance forms.  *Id.* ¶ 31.

Crispin spent a total of three weeks on suicide watch at Garner.  *Id.* ¶ 32.  During that time, he was confined in a cell with a safety blanket, a jumpsuit, a t-shirt, boxer shorts and socks. *Id.*  He attempted to resolve his improper placement on suicide watch by contacting Dr. John Doe 9, Deputy Warden Egan and Warden John/Jane Doe.  *Id.* ¶ 33.  He requested that these defendants remove him from suicide watch because the isolative nature of the confinement was affecting his mental health.  *Id.*  Dr. John Doe 9, Deputy Warden Egan and Warden John/Jane Doe ignored or refused to act on his requests as retaliation.  *Id.*

**Discussion**

Based upon these allegations, Crispin asserts violations of his First, Eighth and Fourteenth Amendment rights.  He seeks declaratory relief, injunctive relief, compensatory and punitive damages.

**Official Capacity Requests for Money Damages and Declaratory Relief**

Crispin sues the defendants in their individual and official capacities.  To the extent that he seeks compensatory and punitive damages from the defendants in their official capacities for

violations of his federal constitutional rights, those requests are barred by the Eleventh

Amendment and are dismissed pursuant to 28 U.S.C. § 1915A(b)(2). *See Kentucky v. Graham*,

473 U.S. 159 (1985) (Eleventh Amendment, which protects the state from suits for monetary

relief, also protects state officials sued for damages in their official capacity).

Crispin seeks a declaration that the defendants violated his First, Eighth and Fourteenth

Amendment rights. Under the doctrine of *Ex parte Young,* 209 U.S. 123 (1908), a plaintiff may

seek prospective injunctive and declaratory relief to address an ongoing or continuing violation

of federal law or a threat of a violation of federal law in the future. *See In re Deposit Ins.*

*Agency,* 482 F.3d 612, 618 (2d Cir. 2007); *Ward v. Thomas,* 207 F.3d 114, 120 (2d Cir. 2000).

Crispin's request for a declaration that the defendants violated his federal constitutional rights in

the past are barred by the Eleventh Amendment. *See Puerto Rico Aqueduct and Sewer Authority*

*v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993) (the Eleventh Amendment "does not permit

judgments against state officers declaring that they violated federal law in the past").[4]

Accordingly, the request for declaratory relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Official Capacity Requests for Injunctive Relief**

Crispin includes three requests for injunctive relief related to the provision of mental

health treatment to inmates. Compl. at 18. The court addresses those requests in a separate

section of this ruling. The fourth request for injunctive relief pertains to a measure that Crispin

believes will prevent assaults on inmates by correctional officers. Specifically, he seeks an order

requiring correctional officers, lieutenants, and captains to "wear audio-visual-body cameras by

December 31, 2021 to stop and prevent the continue[d] mountain of lawsuits filed and to stop &

---

[4]  Furthermore, if Crispin was to prevail on his First, Eighth or Fourteenth Amendment claims, the court
necessarily would determine that the defendants had violated his constitutional rights. Thus, a separate award of

7

prevent assaults on prisoners and constitutional violations." *Id.*

The Second Circuit has held that an inmate's request for prospective injunctive relief from correctional staff in connection with conditions of confinement at a particular correctional institution becomes moot when the inmate is discharged from that institution, is transferred to a different institution or has received the relief requested. *See Booker v. Graham*, 974 F.3d 101, 107–08 (2d Cir. 2020) ("'In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.'") (quoting *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006)); *Martin-Trigona v. Shiff*, 702 F.2d 380, 386 (2d Cir. 1983) ("The hallmark of a moot case or controversy is that the relief sought can no longer be given or is no longer needed"). Crispin is no longer confined at Hartford Correctional where the assault by Officer Fortin allegedly occurred or at Garner where he was transferred shortly after the assault. Nor does Crispin allege a continuing violation of his constitutional rights by Officer Fortin or Officer John Doe 1 or Nurse Jane Doe 2.Thus, to the extent that Crispin seeks injunctive relief as against these defendants, the request is moot.

Furthermore, and perhaps more to the point, Crispin does not have standing to assert a request for injunctive relief on behalf of other inmates who may be confined at Hartford Correctional, Garner, Cheshire or any other prison facility in Connecticut. *See Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 358 (2d Cir. 2016) ("Another prudential [limit on standing is the] principle is that a plaintiff may ordinarily assert only his own legal rights, not those of third parties."). Accordingly, the fourth request for injunctive relief is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

**Eighth Amendment Claims**

---

declaratory relief is unnecessary.                                8

Crispin asserts claims of excessive force, failure to intervene, deliberate indifference to mental health needs, and unconstitutional conditions-of-confinement under the Eighth Amendment.  Because Crispin was a pretrial detainee at the time of the incidents set forth in the complaint, the Fourteenth Amendment's substantive due process guarantee rather than the Eighth Amendment's prohibition against cruel and unusual punishment is applicable to each of these claims.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2017)  (holding that claims pertaining to the conditions of a pretrial detainees confinement in a state prison facility should be evaluated under the Fourteenth Amendment's Due Process Clause because "[a] [p]retrial detainee[] ha[s] not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise."); *Edrei v. Maguire*, 892 F.3d 525, 533 (2d Cir. 2018) ("pretrial detainees ... rely on the [Fourteenth Amendment's] constitutional guarantee of "due process" as the source of an excessive force claim"); *Valdiviezo v. Boyer*, 752 F. App'x 29, 32-33 (2d Cir. 2018) (summary order) (observing that pretrial detainees' claims of deliberate indifference to serious medical needs should be evaluated under Fourteenth Amendment standard set forth in *Darnell* rather than Eighth Amendment standard) (citation omitted).  Accordingly, the claims asserted under the Eighth Amendment are dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Claim – Deliberate Indifference Mental Health**

Crispin alleges that on January 27, 2018 at Hartford Correctional, he attempted to verbally vent to Nurse Jane Doe 2 about his feelings of isolation, but she kept interrupting him to ask him what relief he sought from her.  She ultimately determined that the only course of action was to have Crispin placed on suicide watch.  Crispin disagreed with this course of action because he had informed Nurse Jane Doe 2 that he was not suicidal.  Crispin contends that Nurse

Jane Doe 2 was deliberately indifferent to his mental health needs.

The standard announced in *Darnell,* applies to claims that prison officials or medical providers delayed the provision of medical treatment to a detainee or deprived a detainee of any treatment for a serious condition. *See, e.g., Roice v. Cty. of Fulton*, 803 F. App'x 429, 430, 432 (2d Cir. 2020) (summary order) (applying *Darnell's* Fourteenth Amendment standard to pretrial detainee's claim that prison medical providers failed to promptly treat his complaints of abdominal pain and nausea); *Charles v. Orange Cty*., 925 F.3d 73, 86 (2d Cir. 2019) ("Although *Darnell did* not specifically address medical treatment, the same principle applies here."). There are two prongs to a Fourteenth Amendment substantive due process/deliberate indifference to medical needs claim. *See Charles*, 925 F.3d at 86 (2d Cir. 2019) (citing *Estelle v. Gamble*, 429 U.S. 97, 105 (1974); *Darnell*, 849 F.3d at 29).

Under the first prong, a detainee must allege that his or her medical need or condition is serious. *Id.* A "sufficiently serious" medical need exists if the detainee suffers from an urgent medical condition that can cause "death, degeneration, or extreme [or chronic] pain." *Id.* (citation omitted). Factors relevant to the seriousness of a medical condition include "whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Id.* (citing *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998)).

Under the second prong, a detainee must allege that the medical provider or prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the

10

[prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.  Negligent conduct by a prison official or medical provider does not satisfy the second prong of the Fourteenth Amendment standard.  *See, e.g.*, *Sanders v. Laplante*, No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3–4 (D. Conn. Oct. 25, 2019) ("Importantly, even after *Darnell*, it is well-settled that negligence, even if it constitute[s] medical malpractice, does not, without more, engender a constitutional claim.") (internal quotation marks omitted) (citing, *inter alia*, *Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence")).

Crispin contends that Nurse Jane Doe 2 deterred him from seeking mental health treatment in the future by recommending that he be placed on suicide watch rather than listening to him vent about his mental distress.  He claims that he was not suicidal at the time and only needed to "decompress" and talk about his mental distress that had been caused by sensory deprivation.  Crispin was not placed on suicide watch that day, however, because of the intervening assault by Officer Fortin.

Concededly, severe "psychiatric or psychological conditions can present serious medical needs in light of our contemporary standards." *Charles*, 925 F.3d at 86. But other than distress caused by having been placed in a cell on lockdown for twenty-four hours, Crispin does not describe any mental health conditions that he suffered from on January 27, 2018.  Indeed, he denies that he was suicidal that day.  Nor does he allege that his feelings of isolation or distress interfered with his daily activities or that any other mental or medical provider had diagnosed him as suffering from a particular mental health condition that might have been exacerbated by his isolated confinement.  He asserts only that he needed to vent to decompress. Thus, Crispin

has not asserted facts to state a claim that he suffered from a serious mental health condition on

January 27, 2018 so as to satisfy the first prong of the *Darnell* standard.

Even if Crispin had adequately alleged that he suffered from a serious mental health

condition, the facts alleged do not support a plausible claim that Nurse Jane Doe 2 was

deliberately or recklessly indifferent to that condition.  Crispin suggests that Nurse Jane Doe 2

should have let him vent further about his feelings of isolation rather than concluding that the

only course of action was to place him on suicide watch.  A disagreement with a diagnosis or

treatment, however, does not state a claim of deliberate indifference.  *See Sherman v. Cook*, No.

3:20-CV-1485 (SRU), 2021 WL 311283, at *6 (D. Conn. Jan. 29, 2021) ("[I]t is clear that

mere disagreement over the proper treatment is not actionable under the Fourteenth

Amendment.") (internal quotation marks and citation omitted); *Revels v. Corr. Med. Care, Inc.*,

No. 9:17-cv-0088 (MAD/TWD), 2018 WL 1578157, at *4 (N.D.N.Y. Mar. 28, 2018) ("A

mere disagreement with a prescribed course of treatment is not sufficient to establish a violation

of the Eighth or Fourteenth Amendment." (citation omitted).  Nor has Crispin alleged that Nurse

Jane Doe 2 knew or should have known that her recommendation that he be placed in a cell on

suicide watch, as the only course of treatment under the circumstances, would subject him to a

serious risk of harm to his health. To the contrary, during a suicide watch, medical, mental health

or correctional officers could observe Crispin to ensure his safety.  *See* State of Connecticut

Administrative Directive 8.14(5)-(9), Suicide Prevention and Intervention (effective August 15,

2009).[5]  Furthermore, Crispin was not actually placed on suicide watch on January 27, 2018 due

---

[5]  The Court takes judicial notice of the Administrative Directives on the DOC's website.  *See Nicholson v. Murphy*, No. 3:02-cv-1815 (MRK), 2003 WL 22909876, at *7, n.2 (D. Conn. Sept. 19, 2003) (citation omitted) (taking judicial notice of the Administrative Directives as "written guidelines, promulgated pursuant to Connecticut General Statutes § 18-81, that establish the parameters of operation for Connecticut correctional facilities."). *See*

to the intervening incident involving his altercation with Officer Fortin.  The Fourteenth

Amendment deliberate indifference to mental health needs claim asserted against Nurse Jane

Doe 2 is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

**Fourteenth Amendment Claims – Excessive Force and Failure to Intervene**

Crispin alleges that Officer Fortin assaulted him for no apparent reason causing injuries

to his face and eyes.  In *Kingsley v. Hendrickson,* 586 U.S. 389 (2015), the Supreme Court held

that pretrial detainee suits for excessive force arising under the Fourteenth Amendment are

properly analyzed using an objective, not subjective, standard. Specifically, the Supreme Court

held "that a pretrial detainee must show only that the force purposely or knowingly used against

him was objectively unreasonable."  *Id.* at 396-97.  The Supreme Court cautioned district courts

not to "mechanically" apply the objective reasonableness standard, because "objective

reasonableness turns on the facts and circumstances of each particular case." *Id.* at 397 (citation

omitted). Various considerations "may bear on the reasonableness or unreasonableness of the

force used," including the "relationship between the need for the use of force and the amount of

force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit

the amount of force; the severity of the security problem at issue; the threat reasonably perceived

by the officer; and whether the plaintiff was actively resisting," among others.  *Id.*

Here, Crispin has stated a plausible claim that the unprovoked use of force by

Correctional Officer Fortin in picking him up, throwing him to the ground, causing him to lose

consciousness and repeatedly banging his head on the ground was excessive.  The Fourteenth

---

*also Boarding Sch. Review, LLC v. Delta Career Educ. Corp.*, No. 11 Civ. 8921(DAB), 2013 WL 6670584, at *1
n.1 (S.D.N.Y. Mar. 29, 2013) (citations omitted) ("The Court generally has the discretion to take judicial notice of
[I]nternet material").  Administrative Directive 8.14 may be found at https://portal.ct.gov/DOC/AD/AD-Chapter-8
(last visited February 17, 2021) .

Amendment excessive force claim will proceed against Officer Fortin in his individual capacity.

Crispin alleges that Nurse Jane Doe 2 and Officer John Doe 1 were present during the assault by Officer Fortin and could have intervened to stop or temper the use of force. To state a claim for a prison official's failure to intervene, a plaintiff must allege facts showing that: "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) [the officer knew] that the victim's constitutional rights were being violated; and (3) the officer [did] not take reasonable steps to intervene." *See Jean–Laurent v. Wilkinson*, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008), *aff'd sub nom. Jean-Laurent v. Wilkerson*, 461 F. App'x 18 (2d Cir. 2012). "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11–12 (2d Cir. 1988)).

Crispin suggests that Nurse Jane Doe 2 and Officer John Doe 1 were nearby when Correctional Officer Fortin allegedly threw him to the ground, jumped on his back and beat his head against the ground. Given their proximity to the use of force, they may have had the opportunity to intervene to stop the force. The failure to intervene claim will proceed against Nurse Jane Doe 2 and Officer John Doe 1 in their individual capacities for further factual development.

### Fourteenth Amendment – Conditions During Confinement on In-Cell Restraints

Crispin asserts a Fourteenth Amendment claim related to the conditions to which he was exposed during his confinement in the restrictive housing unit at Hartford Correctional Center for one or two days following the assault. Compl. at 13 ¶ 9. At the time, he had been placed on in-cell restraints. *Id.*

14

There are two prongs to the *Darnell* standard governing a conditions-of-confinement claim asserted under the Fourteenth Amendment. *Id.* Under the first prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health . . . which includes the risk of serious damage to physical and mental soundness." *Id.* at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter medical care, and reasonable safety, or has been subjected to an unreasonable risk or serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

To meet the second prong of a Fourteenth Amendment conditions of confinement claim, a detainee must allege that the prison official "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to [him or her] even though the [prison]-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* Mere negligent conduct by a prison official does not satisfy the second prong of the Fourteenth Amendment standard. *Id.* at 36.

Crispin alleges that on January 28, 2018, a medical staff member dispensed medication to him and a correctional official and/or medical staff member checked his restraints but did not permit him to use the bathroom. *Id.* at 7 ¶ 17. Later that day, after he refused to return his asthma inhaler to a medical staff member, a nurse and a lieutenant documented the injuries that he had suffered during the assault by Officer Fortin but did not permit him to use the bathroom. *Id.* ¶ 18. He states that he was unable to use the toilet for more than twenty-four hours. *Id.* at 13

15

¶ 9.

Crispin suggests that on January 28, 2018, he needed assistance in using the toilet because he had been placed on in-cell restraints.  He does not allege, however, that any of the named defendants refused to assist him or permit him to use the toilet.  In fact, his description of this Fourteenth Amendment claim includes no reference to any defendant.  The facts as alleged do not state a claim that any defendant deprived Crispin of a basic human need in connection with his confinement  and the use of in-cell restraints.  This Fourteenth Amendment conditions of confinement claim is dismissed without prejudice.  *See* 28 U.S.C. § 1915A(b)(1).

### Fourteenth Amendment Claim – Procedural Due Process

Crispin asserts a Fourteenth Amendment procedural due process claim related to his January 27, 2018 placement on in-cell restraints and the disciplinary report issued to him in connection with the altercation with Officer Fortin.  *Id.* ¶ 13; at 15 ¶ 2.  Crispin alleges that immediately following the assault by Officer Fortin, unidentified prison officials escorted him to a cell in the restrictive housing unit and placed him on in-cell restraints.  He asserts that an officer or official delivered the disciplinary report to him after he was placed on in-cell restraints but did not read the report to him and did not hand it to him upon his release from in-cell restraints.  *Id.* at 15 ¶ 2.  He also did not receive an order explaining the basis for his confinement in the restrictive housing unit after the assault.  *Id.*  The facts suggest that Crispin was confined in the restrictive housing unit for at most two days from January 27, 2018 to January 29, 2018 at which point he consented to being placed on suicide watch in the mental health housing unit.

Again, the allegations in support of this claim make no mention of any of the named defendants. Furthermore, Crispin does indicate the disposition of the disciplinary report, whether

a hearing was held, the outcome of the report and the identity of any DOC personnel who may have been involved in these events.  Accordingly, the facts as alleged do not state a claim that any named defendant denied Crispin procedural due process in connection with his placement in the restrictive housing unit or the issuance of the disciplinary report.  Accordingly, this Fourteenth Amendment due process claim is dismissed without prejudice.  *See* 28 U.S.C. § 1915A(b)(1).

### Contacting the State Police and Filing Grievances

Crispin alleges that on January 30, 2018, Lieutenant Jane Doe 8 denied his requests to contact the State Police in writing and that after his transfer to Garner, Counselor Colon denied his requests to contact the State Police in writing or by telephone and also denied his requests for grievance forms.  Crispin concedes that at some point after January 30, 2018, his attorney contacted the Connecticut State Police regarding the assault by Officer Fortin.  Compl. at *Id.* at 9 ¶ 24.  Furthermore, in a prior federal case filed in this court, Crispin asserted similar allegations pertaining to the requests that he made to contact the police about the assault by Officer Fortin and stated that his attorney had in fact contacted the police at the end of January 2018 and that he had sent letters to the Connecticut State Police Department in April 2018.  *See Crispin v. Reischerl, et al.*, Case No. 3:19cv413 (VLB) (Am. Compl., ECF No. 9, at 14, 34-37).

Crispin has not plausibly alleged that Lieutenant Jane Doe 8's refusal to draft a statement for him or to provide him with paper to draft a statement addressed to the Connecticut State Police Department or Counselor Colon's refusal to permit him to call or to write to the Connecticut State Police Department during the month following the assault by Officer Fortin deprived him of  the opportunity to contact the police department through his attorney or to

17

submit a complaint to the Connecticut State Police at a later date.  *See, e.g.*, *Conquistador v. Hartford Police Dep't*, No. 3:15-cv-1618 (MPS), 2017 WL 959731, at *4 (D. Conn. Mar. 13, 2017) (dismissing claim that police department would not accept or file plaintiff's criminal complaint about the theft of his vehicle because "[p]laintiff [had] not allege[d] that he was denied an opportunity to file a criminal complaint" given that officers directed him to "come to the police station to provide more information about [his] report" regarding his stolen vehicle); *Flores v. Lantz*, No. 3:05-cv-1288 (RNC), 2008 WL 4453421, at *6 (D. Conn. Sept. 30, 2008) (claim by pretrial detainee that correctional officers "denied hi[m] his right to report criminal assault to a law enforcement agency" did not state a "cause of action for a deprivation of a federally protected right" in light of fact that plaintiff had "contacted the Connecticut State Police through his sister on May 13, 2005, four days after the assault" and a State "Trooper ... [had] visited plaintiff on May 31 and [had] investigated his complaint") (internal citation omitted).  Accordingly, Crispin's claim that Lieutenant Jane Doe 8 and Counselor Colon denied him access to the Connecticut State Police Department in violation of his constitutional rights is dismissed.  *See* 28 U.S.C. § 1915A(b)(1).

The First Amendment protects an individual's right to petition the government for redress of grievances.  Inmates, however, have no constitutional entitlement to grievance procedures, to receive a response to a grievance, or to have a grievance properly processed.  *See Riddick v. Semple*, 731 F. App'x 11, 13 (2d Cir. 2018) (claim relating to grievance procedures "confused a state-created procedural entitlement with a constitutional right"; "neither state policies nor 'state statutes ... create federally protected due process entitlements to specific state-mandated procedures' ") (quoting *Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003)).

As Crispin has no constitutionally protected right to file a grievance, the allegation that Counselor Colon refused to provide him with grievance forms during his confinement on suicide watch fails to state a plausible violation of his constitutional rights. Accordingly, the allegation that Counselor Colon refused to provide Crispin with grievance forms during his confinement on suicide watch at Garner fails to state a claim of a violation of his federally or constitutionally protected rights and is dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Lieutenants John Does 3, 4, 5

Crispin includes no facts or allegations regarding the conduct of these John Doe defendants. As such, he has not alleged that either Lieutenant John Doe 3, or Lieutenant John Doe 4, or Lieutenant John Doe 5 violated his federally or constitutionally protected rights. The claims against these defendants are dismissed. *See* 28 U.S.C. § 1915A(b)(1).

### Remaining Claims

Crispin also asserts: a First Amendment retaliation claim against CSW Jane Doe 6, Dr. Jane/John Doe 7, Deputy Warden Egan, Dr. John Doe 9, Warden Jane/John Doe 10; a Fourteenth Amendment forced medication and treatment claim against Dr. Jane/John Doe 7 and CSW Jane Doe 6; a Fourteenth Amendment deliberate indifference to mental health needs claim against Dr. John Doe 9; and a Fourteenth Amendment punishment claim against Deputy Warden Egan, Dr. John Doe 9, Warden Jane/John Doe 10. These claims are not sufficiently related to the Fourteenth Amendment claims discussed above and are therefore inappropriately joined in this complaint.

Rule 21 of the Federal Rules of Civil Procedure provides that a court "may sever any claim against a party" pursuant to a motion filed by a party to the action or on its own. Fed. R.

Civ. P. 21. In exercising its discretion to decide whether to sever a claim, a court should weigh the following factors: "(1) [do] the claims arise out of the same transaction or occurrence; (2) [do] the claims present some common question of law or fact; (3) [would] settlement of the claims or judicial economy be facilitated; (4) will prejudice [ ] be avoided; and (5) [will] different witnesses and documentary proof [be] required for the separate claims." *Costello v. Home Depot U.S.A., Inc.*, 888 F. Supp. 2d 258, 263–66 (D. Conn. 2012) (citation omitted).

The allegations pertaining to the use of excessive force by Officer Fortin, the failure to intervene by Officer John Doe 1 and Nurse Jane Doe 2, the placement of Crispin in the restrictive housing unit on in-cell restraints, the issuance of the disciplinary report, and the conditions of confinement experienced by Crispin during his confinement on in-cell restraints do not arise out of the same transaction and occurrence as the allegations related to the decisions by CSW Jane Doe 6 and Dr. Jane/John Doe 7 to force Crispin to take medication and/or to consent to placement on suicide watch; the decisions by Deputy Warden Egan, Dr. John Doe 9, Warden Jane/John Doe 10 to continue Crispin's placement on suicide watch at Garner, or the decision by Dr. John Doe 9 to continue Crispin on suicide watch without examining or evaluating him. The factual issues and the legal theories related to each set of claims are not all common to each other. As such, different witnesses/testimony and documentary evidence would be required to prove the separate sets of claims at trial. The court concludes that these latter unrelated allegations are not properly joined in this action and the relevant factors favor severance of these allegations and the requests for injunctive relief pertaining to the provision of mental health treatment that are associated with these allegations. *See Papantoniou v. Quiros*, No. 3:19CV1996 (KAD), 2020 WL 1904692, at *10 (D. Conn. Apr. 17, 2020) (severing and

dismissing without prejudice all claims unrelated to Eighth Amendment deliberate indifference to medical needs claim as improperly joined in violation of Rules 20 and 21, Fed. R. Civ. P. and advising plaintiff that improperly joined claims must be pursued in separate actions) (citations omitted). Pursuant to Rule 21, Fed. R. Civ. P., the court will sever and dismiss without prejudice these claims and the requests for injunctive relief associated with those claims.  If Crispin seeks to pursue these claims and requests for relief, he must do so by filing separate lawsuits.

**ORDERS**

In accordance with the foregoing analysis, the court enters the following orders:

**(1)**      The Eighth Amendment claims, the Fourteenth Amendment deliberate indifference to mental health needs claim asserted against Jane Doe Nurse 2, the claim that Lieutenant Jane Doe 8 and Counselor Colon failed to permit Crispin to contact the state police, the claim that Counselor Colon refused to provide Crispin grievance forms, the claims asserted against Lieutenant John Doe 3, Lieutenant John Doe 4 and Lieutenant John Doe 5, the request for declaratory relief and the fourth request for injunctive relief are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The requests seeking compensatory and punitive damages from the defendants in their official capacities for violations of Crispin's federal constitutional rights are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(2). The Fourteenth Amendment conditions of confinement claim arising out of Crispin's confinement on in-cell restraints for two days in late January 2018 and the Fourteenth Amendment procedural due process claims related to the issuance of the disciplinary report and Crispin's placement on in-cell restraints are **DISMISSED** without prejudice.

The First Amendment retaliation claim asserted against CSW Jane Doe 6, Dr. Jane/John

Doe 7, Deputy Warden Egan, Dr. John Doe 9, Warden Jane/John Doe 10; the Fourteenth

Amendment forced medication claim asserted against CSW Jane Doe 6, Dr. Jane/John Doe 7; the

Fourteenth Amendment punishment claim asserted against Deputy Warden Egan, Dr. John Doe

9, Warden Jane/John Doe 10; and the Fourteenth Amendment deliberate indifference to mental

health needs claim asserted against Dr. John Doe 9 and the three associated requests for

injunctive relief are **SEVERED** and **DISMISSED** pursuant to Rule 21, Fed. R. Civ. P.  If

Crispin seeks to pursue these claims, he must do so by filing separate lawsuits.

Accordingly, all claims asserted against Lieutenants John Doe 3, John Doe 4, John Doe 5

and Jane Doe 8, Deputy Warden Egan, Counselor Colon, Dr. Jane/John Doe 7, Dr. John Doe 9,

Clinical Social Worker ("CSW") Jane Doe 6 and Warden Jane/John Doe 10 have been

**DISMISSED**.

The Fourteenth Amendment excessive force claim will proceed against Correctional

Officer Fortin in his individual capacity and the Fourteenth Amendment failure to intervene in

the use of excessive force claim will proceed against Nurse Jane Doe 2 and Officer John Doe 1

in their individual capacities.

(**2**)     Crispin is advised that the Clerk cannot serve the complaint on Officer John Doe

1 or Nurse Jane Doe 2 because he has not provided the first or last name for either

defendant.  Crispin will have ninety (90) days from the date of this order to conduct discovery

and file a notice identifying  Officer John Doe 1 by his first and last name and Nurse Jane Doe 2

by her first name and last name.  The court will dismiss the claims against any Doe defendant for

whom Crispin fails to provide a first and last name within the time specified.

(**3**)     Crispin may file an amended complaint on or before April 1, 2021, to reassert his

Fourteenth Amendment procedural due process or conditions of confinement claims arising out of the use of in-cell restraints.  If chooses to file an amended complaint, Crispin must identify the correctional officers or officials and/or the medical staff members who allegedly refused or neglected to assist him in using the toilet during his confinement on in-cell restraints and must otherwise address the deficiencies identified herein.  If he chooses to reassert the procedural due process claim related to the issuance of the disciplinary report and his placement on in-cell restraints he must identify the officials involved in the issuance of the disciplinary report, whether a hearing was held, the outcome of any such hearing and the factual basis upon which Crispin asserts a procedural due process violation.

(4)    The Clerk shall verify the current work address of Correctional Officer Fortin with the State of Connecticut Office of Legal Affairs and mail a copy of the complaint, this order, and a waiver of service of process request packet to Officer Fortin in his individual capacity at his confirmed address.  On the thirty-fifth (35th) day after mailing, the Clerk shall report to the court on the status of the request.  If Officer Fortin fails to return the waiver request, the Clerk shall arrange for in-person service by the U.S. Marshals Service and Officer Fortin shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(5)    Defendant Fortin shall file his response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to him.  If Officer Fortin chooses to file an answer, he shall admit or deny the allegations and respond to the cognizable claims recited above.  He may also include any and all additional defenses permitted by the Federal Rules.

23

**(6)**      Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **September 1, 2021.** Discovery requests need not be filed with the court.

**(7)**      All motions for summary judgment shall be filed by **October 1, 2021.**

**(8)**      If Crispin changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the court.  Failure to do so can result in the dismissal of the case.  Crispin should write PLEASE NOTE MY NEW ADDRESS on the notice and list all case numbers.  It is not enough to just put the new address on a letter without indicating that it is a new address.  Crispin should also notify the defendants or the attorney for the defendants of his new address.

**(9)**      Crispin shall utilize the Prisoner Efiling Program when filing documents with the court.  Crispin is advised that the Program may be used only to file documents with the court.  Local Court Rule 5(f) provides that discovery requests are not to be filed with the court.  Therefore, discovery requests must be served on the defendant's attorney by regular mail.

**(10)**      The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures" which will be sent to the parties by the Clerk.  The order also can be found at http://ctd.uscourts.gov/district-connecticut-public-standing-orders.

**(11)**      The Clerk is directed to send a copy of the complaint and a copy of this order to the Connecticut Attorney General and to the DOC Legal Affairs Unit.

SO ORDERED at Bridgeport, Connecticut this 1st day of March 2021.


__/s/_____
Kari A. Dooley
United States District Judge

24