**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| JOSSEAN CRISPIN, | ) | CASE NO. 3:20-cv-1796 (KAD) |
| *Plaintiff,* | ) | : |
| v. | ) | |
| | ) | |
| FORTIN, ET AL., | ) | JANUARY 5, 2023 |
| *Defendants.* | ) | |

<u>MEMORANDUM OF DECISION</u>
**RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [ECF. No. 50]**

Plaintiff, Jossean Crispin ("Crispin"), initiated this civil rights action by filing a complaint pursuant to 42 U.S.C. § 1983, bringing multiple claims against multiple defendants. At this stage, Crispin is litigating a single excessive force claim against a single defendant, Correctional Officer Fortin ("Officer Fortin"). On March 15, 2022, Officer Fortin filed a motion for summary judgment on the ground that Crispin failed to properly exhaust his administrative remedies prior to bringing this action. For the following reasons, the motion for summary judgment is GRANTED.

**Procedural Background**

On December 3, 2020, Crispin filed a pro se complaint bringing § 1983 claims against multiple defendants, including Officer Fortin. *See* Compl., ECF No. 1, at 1. On March 1, 2021, the Court entered an Initial Review Order that dismissed most of Crispin's claims. *See* Initial Review Order ("IRO"), ECF No. 8, at 21–22. But the Court permitted Crispin to proceed with a Fourteenth Amendment excessive force claim against Officer Fortin and Fourteenth Amendment failure to intervene to the use of excessive force claims against two John/Jane Doe defendants. *See id.* These surviving claims were supported by an allegation that Officer Fortin violently assaulted Crispin at Hartford Correction Center ("HCC") on January 27, 2018. *See* Compl. at 4, 6–7 at ¶¶ 1, 10–11; *see* IRO at 2–3.

On February 9, 2022, the two noted John/Jane Doe defendants were terminated as parties to this action due to Crispin's failure to report their identities to the Court. *See* ECF No. 49. Officer Fortin became the sole remaining defendant. On March 15, 2022, Officer Fortin filed a motion for summary judgment. *See* Defendant's Motion ("Def. Mot."), ECF No. 50.

Crispin twice moved for extensions of time to file a response to the motion for summary judgment. *See* ECF Nos. 51, 59. And the Court granted each of these motions, ultimately permitting Crispin to file a response on or before August 5, 2022. *See* ECF Nos. 53, 61. Despite these extensions, Crispin has not responded to the motion for summary judgment.

**Facts[1]**

In January of 2018, Crispin was admitted to Connecticut Department of Correction (DOC) custody to serve a remaining portion of a prison sentence. Defendant's Local Rule Statement ("LRS"), ECF No. 50-1, at 1, ¶ 1.[2] On January 27, 2018, while incarcerated at HCC, Crispin was involved in a physical altercation with Officer Fortin. *See id.* at 1–2, ¶¶ 4-11.[3]

Nearly seven months later, on July 19, 2018, an HCC Grievance Coordinator received a

---

[1] The facts are taken from Officer Fortin's Local Rule 56(a)1 Statement and supporting exhibits. Local Rule 56(a)(1) provides: "Each material fact set forth in the Local Rule 56(a)1 Statement and supported by the evidence will be deemed admitted (solely for purposes of the motion) unless such fact is controverted by the Local Rule 56(a)(2) Statement required to be filed and served by the opposing party in accordance with this Local Rule, or the Court sustains an objection to the fact." Officer Fortin informed Crispin of the consequence of failing to file a Local Rule 56(a)(2) Statement. *See* Notice to Pro Se Litigant, ECF No. 50-10. But Crispin nonetheless failed to file a statement of facts under Local Rule 56(a)(2). Thus, all material facts set forth in Officer Fortin's 56(a)(1) Statement are deemed admitted to the extent supported by the evidence.

[2] In its IRO, the Court permitted Crispin to proceed with a *Fourteenth Amendment* excessive force claim based on its understanding that Crispin was a pretrial detainee when allegedly assaulted. *See* IRO at 1 n.1, 9, 13. Because Crispin was, in fact, serving a prison sentence when allegedly assaulted, his excessive force claim must be evaluated exclusively as an *Eighth Amendment* cause of action. *See Felix-Torres v. Graham*, 521 F. Supp. 2d 157, 164 (N.D.N.Y. 2007). The Court need not address this issue, however, as Officer Fortin does not move for summary judgment on the merits.

[3] Officer Fortin's actions, as described in his Local Rule 56(a)(1) Statement, would not constitute excessive force under any constitutional standard. But this has no bearing on the failure to exhaust defense that Fortin invokes as a basis for summary judgment.

"Level One" grievance from Crispin. *See id.* at 3, ¶ 16; *see* Grievance Report, ECF No. 50-6, at 2. The grievance was dated May 15, 2018. *See* Grievance Report at 3. In the grievance, Crispin complained of excessive force allegedly suffered at the hands of Officer Fortin on January 27, 2018. *See id.* at 4.

With his grievance, Crispin included notes self-dated February 6, 2018, April 10, 2018, April 12, 2018, June 27, 2018 and July 10, 2018. *See id.* at 6–11.[4] These notes are addressed to HCC's Warden and uniformly complain of Officer Fortin's alleged excessive force. *See id.*

The HCC Grievance Coordinator denied Crispin's grievance on the ground that Crispin had not filed it within 30 days of the event given rise to his complaint, as required by DOC Administrative Directives. *See id.* at 2, 4. A notation on the grievance form indicates that Crispin was notified of this denial on September 4, 2018. *See id.* at 4.

On September 4, 2018, immediately after receiving notice of his denied grievance, Crispin filed an administrative appeal. *See* Def. LRS at 4; *see* Grievance Appeal, ECF No. 50-7, at 2–4. In his appeal documents, Crispin argued that the Grievance Coordinator erred by not considering that he had been placed on suicide watch for 23 days following Officer Fortin's alleged use of excessive force. *See* Grievance Appeal at 3. Crispin further asserted that he was transferred to Whiting Forensic Hospital ("Whiting") shortly following his release from suicide watch, and that DOC officials thereafter "shipped [him] around repeatedly so [he] wouldn't be able to file a Grievance/Complaint for being assaulted." *Id.* at 4.

On September 6, Crispin wrote a letter to the HCC grievance Coordinator referencing his grievance appeal and asserting that "[t]here are circumstances that are reasonable that interfered

---

[4] The attached notes include signature dates that differ from dates noted on memorandum headings.

with my ability to file [my grievance] timely like the timeframe of response by DOC and hospitalization in C.D.O.C. of 23-day and one at [Whiting]." Def. LRS at 2.

DOC records attached as an exhibit to the summary judgment filings show that Crispin was transferred twice during the 30-day period within which he had to file a timely grievance pertaining to Officer Fortin's alleged excessive force. *See* DOC Records, ECF No. 50-3, at 3. On February 2, 2018, Crispin was transferred from HCC to Garner Correctional Institution ("Garner"). And on February 8, 2022, Crispin was transferred from Garner to Northern Correctional Institution. Crispin was not transferred to Whiting until March 23, 2018—well beyond his 30-day deadline for filing a timely administrative grievance. *See id.*

**Standard of Review**

A motion for summary judgment may be granted only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Rule 56(a), Fed. R. Civ. P.; *see also Nick's Garage, Inc. v. Progressive Cas. Ins. Co.,* 875 F.3d 107, 113–14 (2d Cir. 2017). "A genuine issue of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Nick's Garage*, 875 F.3d at 113–14 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Which facts are material is determined by the substantive law. *Anderson*, 477 U.S. at 248. "The same standard applies whether summary judgment is granted on the merits or on an affirmative defense…" *Giordano v. Market Am., Inc.*, 599 F.3d 87, 93 (2d Cir. 2010).

The moving party bears the initial burden of informing the court of the basis for its motion and identifying the admissible evidence it believes demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party meets

this burden, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). He cannot "rely on conclusory allegations or unsubstantiated speculation" but "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Robinson v. Concentra Health Servs.*, 781 F.3d 42, 34 (2d Cir. 2015) (quotation marks and citation omitted). To defeat a motion for summary judgment, the nonmoving party must present such evidence as would allow a jury to find in his favor. *Graham v. Long Island R.R.*, 230 F.3d 34, 38 (2d Cir. 2000).

**Discussion**

Officer Fortin moves for summary judgment exclusively on the ground that Crispin failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA'). *See* Def. Mot. at 1. The PRLA requires prisoners to exhaust administrative remedies prior to filing a federal lawsuit regarding prison conditions. *See* 42 U.S.C. § 1997e(a). Defendants may invoke a prisoner-plaintiff's failure to exhaust administrative remedies as an affirmative defense to a civil rights claim. *See Jones v. Bock*, 549 U.S. 199, 217 (2007). Thus, in the context of summary judgment filings, defendants bear the burden of proving that a prisoner-plaintiff has failed to properly exhaust his or her administrative remedies prior to filing suit. *See Johnson v. Mata*, Fed. App'x 11, 15 (2d Cir. 2012).

Prisoners are excused from PLRA exhaustion requirements only when administrative remedies are not, as a practical matter, made available to him or her. *See Ross v. Blake*, 578 U.S. 632, 639 (2016). Such unavailability may exist when: (1) a grievance system "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) "an administrative scheme [is] so opaque that it becomes, practically speaking,

incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. at 643–44. When remedies have been made available, the PLRA requires "proper exhaustion," which entails compliance with all "procedural rules," such as filing deadlines as defined by a particular penal grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90–91 (2006).

DOC requires inmates to adjudicate grievances pertaining to conditions of their confinement in accordance with its Administrative Directive ("AD") 9.6. Following this Directive—as it was enacted in 2018[5]—an aggrieved inmate must first seek informal resolution with an appropriate correctional facility staff member. *See* AD 9.6 (6)(a) (eff. date Aug. 15, 2013). This informal resolution may begin with verbal consultation. If the "verbal option" fails, an inmate must then submit a written request to an appropriate staff member on an "Inmate Request Form." The Inmate Request Form must be deposited in a designated "collection box." And a "Unit Administrator" must respond to the prisoner's informal request within 15 business days. *See id.*

If an inmate is "not satisfied" with the "informal resolution offered" by a Unit Administrator, he or she may then file a formal "grievance" by depositing it in an "Administrative Remedies box." *See* AD 9.6 (6)(c) (eff. date Aug. 15, 2013). This grievance "must be filed within 30 calendar days of the occurrence or discovery of the cause of the grievance." *Id.*

If a grievance is denied or rejected, or an inmate has not received a response to it within 30

---

[5] In his summary judgment filings, Officer Fortin includes a copy of the currently enacted version of Administrative Directive 9.6. *See* ECF No. 50-5. However, this version of Administrative Directive 9.6 has an eff. date of April 30, 2021, and was, thus, not in effect at the time relevant to this action. Having frequently adjudicated claims implicating the previously enacted version of Administrative Directive 9.6 (eff. date August 15, 2013), *see e.g.*, *Conquistador v. Syed*, 3:19-cv-1450 (KAD), 2019 WL 6529602 at *3 (D. Conn. Dec. 4, 2019), the Court has retained access to this public record. The Court will, thus, consider whether Crispin has complied with administrative exhaustion requirements set forth in the version of Administrative Directive 9.6 in effect between August 15, 2013, and April 29, 2021.

6

business days, the grievance may be appealed. *See* AD 9.6 (6)(g), (i) (eff. date Aug. 15, 2013). If an inmate elects to appeal, he or she must do so within five calendar days of receiving a receipt of a grievance decision. *See* AD 9.6 (k) (eff. date Aug. 15, 2013). With limited exceptions (inapplicable to this case), the denial of a grievance appeal exhausts an inmate's administrative remedies. *See id.*

Here, Officer Fortin contends that Crispin failed to exhaust administrative remedies related to his excessive force claim in two ways: (1) by not submitting a written, informal request within 15 days of the alleged excessive force; and (2) by not filing a grievance within 30 days of the alleged excessive force. Defendant's Memorandum, ECF No. 50-9 at 9.

Officer Fortin's first argument lacks merit because it is premised upon a misreading of Administrative Directives. Administrative Directives require *prison officials* to respond to an inmate's properly submitted, written, informal request within 15 business days. As Administrative Directives were written in 2018—and as they are written now—there is no deadline for an inmate's submission of an informal, written request. *See* AD 9.6 (6)(a) (eff. date Aug. 15, 2013); *see also* AD 9.6 (6)(a)(i)(8) (eff. date April 30, 2021).[6]

Officer Fortin's second exhaustion argument is on sounder footing. Because Crispin was allegedly assaulted on January 27, 2018, he had until February 25, 2018, to file a timely grievance. But Crispin did not file a grievance until some time between May 15, 2018, and July 19, 2018.[7]

---

[6] Disposition of an informal, written request must, however, precede the filing of a grievance. *See* AD 9.6 (6)(C) (eff. date Aug. 15, 2013) ("An inmate may file a grievance if the inmate is not satisfied with the informal resolution offered.") Because a grievance must be filed within 30 *calendar* days of an incident, and prison official have up to 15 *business* days to respond to an informal, written request, an inmate's failure to submit an informal, written request within days of an incident could have the practical effect of preventing him or her from filing a timely grievance.

[7] Crispin's grievance form has no stamped filing date. Crispin signed the grievance on May 15, 2018, and the Grievance Coordinator acknowledged its receipt on July 19, 2018. *See* Grievance Report at 4. The grievance must, therefore, have been filed between those dates.

Thus, Crispin filed his grievance out-of-time.

When administratively appealing the denial of his grievance, Crispin emphasized that he was placed on suicide watch for 23 of the 30 days that he had to file a timely grievance, and that he was transferred repeatedly following his altercation with Officer Fortin. *See* Grievance Appeal at 3–4. However, Crispin cannot overcome his failure to comply with administrative exhaustion requirements by alleging "special circumstances." *Ross*, 578 U.S. at 639. Rather, he must establish that administrative remedies were "unavailable" to him. *Id.* But nothing in the current record suggests that administrative remedies were unavailable to Crispin. There is no evidence that prison officials intentionally, or even effectively, deprived Crispin of the ability to file a timely grievance related to Officer Fortin's alleged use of excessive force. Thus, Officer Fortin has met his burden of demonstrating that Crispin did not exhaust his administrative remedies.  And Crispin—not having responded to the summary judgment motion—has not met his burden of showing that there is a genuine factual dispute as to whether he complied with the PLRA or whether administrative remedies were not available to him to excuse his noncompliance. Accordingly, the Court grants Officer Fortin's motion for summary judgment.

**Conclusion**

Officer Fortin's motion for summary judgment [**ECF No. 50**] is **GRANTED**. The Clerk of the court is directed to enter judgment in favor of the Defendant and close this case.

**SO ORDERED** this 5th day of January 2023 at Bridgeport, Connecticut.

*Kari A. Dooley*_____
Kari A. Dooley
United States District Judge